KRISTEN J. MASON, ESQ. (State Bar No. 320378)
CRIMINAL APPEALS ADVOCATES P.C.
Clientmail@CaliforniaCAA.com
11500 W. Olympic Blvd., Suite 400
Los Angeles, CA 90064
(424) 377-0235
Attorney for Petitioner

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN RAY,<br>　　　　Petitioner,<br>　vs.<br><br>JEFF LYNCH, as Warden,<br>California State Prison, Sacramento,<br>　　　　Respondent. | Case No.: 2:22-cv-06925-PA-ADS<br><br>**Petitioner Sean Ray's Objections to Magistrate Judge's Report and Recommendation** |

　　　Petitioner, Sean Ray (hereinafter "Petitioner"), hereby submits his Objections to Magistrate Judge's Report and Recommendation (Document 32) and moves that this Honorable Court grant the Petition for Writ of Habeas Corpus.

　　　The objections are related to the issue of whether Petitioner has adequately established his claims.

## HABEAS STANDARDS

　　　Petitioner incorporates the "Habeas Standards" section of his Verified First Amended Petition for Writ of Habeas Corpus filed on July 28, 2023. (Memorandum of Points and Authorities, 7/28/2023, Document 22-1, pp. 1-3.)

## ARGUMENT

**I.  Petitioner is entitled to habeas relief as to Claim One regarding law enforcement illegally obtaining his confession.**

This Honorable Court asserts that the state court's rejection of Petitioner's claim that his statements to the CI were coerced and involuntary is not contrary to clearly established federal law or objectively unreasonable as nothing in the record suggests that Petitioner was coerced into making a false confession and the CI did not use threats or violence. (Findings and Recommendation, hereinafter "Resp.," 6/9/2025, Document 32, p. 23.) Petitioner respectfully disagrees.

The CI was twice Petitioner's age, physically imposing, and shared that he was senior gang member who had extensive experience with the penal system. The CI indicated that he was a high-ranking gang member, and this carried with it the tacit understanding that he could order Petitioner's demise. The CI aggressively demanded Petitioner to tell him exactly what happened during the shooting. Petitioner then began providing details about the shooting but reiterated that he required his attorney's assistance before divulging further information. The CI pushed through Petitioner's resistance and induced Petitioner to tell him the remainder.

This Honorable Court adds that although Detective Camarillo presented Petitioner with fabricated evidence and false statements, "deception alone" will not render a confession involuntary. (Resp., p. 24.) However, Petitioner maintains that the involuntary confession's procurement involved more than mere deception. Detective Camarillo and the CI coordinated efforts to apply escalating psychological and physical pressure on Petitioner. This began with informing him that he was being charged with murder and that

Detective Camarillo would need to speak with him. Throughout the discussions between the CI and Petitioner, Detective Camarillo made periodic visits, reinforcing the gravity of the situation.

During this time, the CI insinuated that one of Petitioner's codefendants had already implicated him. Despite this, Petitioner consistently maintained his innocence. The CI further asserted that Detective Camarillo possessed incriminating evidence against him. Subsequently, Detective Camarillo removed Petitioner from his cell for an interview, during which he presented falsified and fabricated evidence allegedly linking Petitioner to the homicide. At that point, Petitioner invoked his right to counsel, prompting an official end to the interview.

However, the interrogation did not cease. After being returned to his cell, Petitioner was again questioned about the purported evidence. Petitioner dismissed the claims, calling the evidence "bullshit." The CI then claimed that the authorities possessed additional undisclosed evidence and reiterated that someone had informed on him. Still, Petitioner insisted on his innocence.

Detective Camarillo further escalated the situation by stating he needed to fingerprint Petitioner as part of the murder charge process. Petitioner initially resisted, but the CI warned that the police would use physical force if necessary. Confronted with this threat, Petitioner ultimately submitted. Once Detective Camarillo departed, the CI aggressively pressed Petitioner to explain what had occurred during the shooting.

Under pressure, Petitioner began recounting details of the incident, but reiterated his desire for legal counsel before continuing further. The CI disregarded this request,

persisted in questioning, and ultimately extracted a full statement from Petitioner. Moreover, the CI compromised Petitioner's right to a fair trial by instructing him to commit perjury and advising him on how to do so.

As such, Petitioner maintains that the coordinated efforts of the CI and Detective Camarillo overbore Petitioner's will and coerced a confession, refuting this Honorable Court's assertion that the Court of Appeal reasonably concluded Petitioner's confession was not involuntary.

This Honorable Court asserts that the Court of Appeal's determination that Petitioner's statements to the CI did not implicate *Miranda* is not contrary to, or an unreasonable application of clearly established Federal law. (Resp., p. 26.) Petitioner respectfully disagrees and maintains that his confession was obtained in violation of *Miranda v. Arizona*.

At the time of questioning, Petitioner was clearly in custody, as he was removed from the jail cell he shared with the CI and brought into an interview room, where Detective Camarillo interrogated him about the homicide. When Petitioner asserted that further questioning must occur through his attorney, law enforcement acknowledged the applicability of *Miranda* by supposedly ceasing direct interrogation and returning him to his cell. However, this act was misleading, as Petitioner remained in custody and was subsequently subjected to continued questioning by the CI—a government agent acting under police direction.

The CI did not terminate the interrogation after Petitioner invoked his right to counsel. Instead, he escalated his tactics until Petitioner confessed, demonstrating that the

CI was acting as a proxy for the police. This indirect method of interrogation, through a so-called "stalking horse," failed to respect Petitioner's clearly invoked right to counsel. Law enforcement's use of the PA to extract a confession—particularly one obtained through coercive or deceptive means—constitutes a clear violation of *Miranda*.

### II. Petitioner is entitled to habeas relief as to Claim Two where the police falsely convinced Godbolt that Petitioner was a snitch and incited him to wish to physically attack Petitioner to get Godbolt to discuss the offense.

This Honorable Court argues that the state court's rejection of Petitioner's claim that the police falsely convinced Godbolt that Petitioner was a snitch and incited him to wish to physically attack Petitioner in an attempt to get Godbolt to discuss the offense cannot be contrary to, or an unreasonable application of, clearly established federal law and that assuming there was an error, any error was harmless. (Resp., p. 28.) Petitioner respectfully disagrees.

There can be no serious dispute that the agent's provocation of Godbolt to physically attack Petitioner would give rise to liability under 42 U.S.C. § 1983 and the Federal Tort Claims Act (FTCA). Under the FTCA, the government is liable for the negligent acts or omissions of its employees—defined, in part, as individuals "acting on behalf of [an] agency . . . with or without compensation." *Logue v. United States*, 412 U.S. 521 (1973). As the Ninth Circuit recognized in *Hines v. United States*, 60 F.3d 1442 (9th Cir. 1995) (abrogated on other grounds by *United States v. Olson*, 546 U.S. 43 (2005)), the government, as employer, bears responsibility for its agents' conduct under the FTCA.

Here, the agent's incitement clearly caused Godbolt to speak when he otherwise would not have. Accordingly, this error was not harmless.

### III. Petitioner is entitled to habeas relief as to Claims One and Three regarding the improper admission of Godbolt's and Wise's testimonial statements.

This Honorable Court contends that the Court of Appeal reasonably determined that Godbolt's and Wise's statements to the informants were nontestimonial and therefore admissible under the Sixth Amendment. (Resp., p. 31.) This Court adds that this claim is not cognizable on federal habeas relief because Petitioner has failed to demonstrate grounds for habeas relief on this issue. (Resp., p. 34.) Petitioner respectfully disagrees.

Petitioner maintains that he has established that the admission of the testimonial statements violated his federal right to due process. The *Perkins* statements made by Wise and Godbolt implicating Petitioner were plainly testimonial in nature. Neither witness testified at trial, rendering them unavailable, and the State never claimed that Petitioner had any prior opportunity to cross-examine them. It is beyond dispute that the sole purpose of law enforcement and the prosecution was to create an out-of-court substitute for trial testimony that could later be used against Petitioner.

Detective Camarillo admitted that the exclusive goal of *Perkins* operations is to elicit incriminating statements from suspects. Absent the unconstitutional coercion involved in obtaining these statements, none of the codefendants would have provided the police with any incriminating information about Petitioner. Law enforcement engineered a deceptive scheme, manipulating the codefendants into believing they were incriminating

one another, which in turn compelled them to falsely implicate Petitioner out of fear for their own safety.

*Perkins* operations are, at their core, law enforcement tools designed to gather prosecutorial evidence. There is no other legitimate purpose for such operations. The government not only condoned coercive tactics to extract statements from the codefendants, but also fabricated entire narratives, as evidenced by the prosecution's significant involvement in shaping these stories and encouraging perjured testimony. Detective Camarillo further acknowledged that the use of undercover agents in *Perkins* operations serves solely to obtain evidence for criminal prosecution. Given these facts, the statements were unquestionably testimonial.

Additionally, the Supreme Court has recognized that, in certain circumstances, the Due Process Clause may bar the admission of unreliable hearsay. In *Michigan v. Bryant*, 562 U.S. 344, 370 n.13 (2011), the Court noted: "Of course the Confrontation Clause is not the only bar to admissibility of hearsay statements at trial. State and federal rules of evidence prohibit the introduction of hearsay, subject to exceptions. Consistent with those rules, the Due Process Clauses of the Fifth and Fourteenth Amendments may constitute a further bar to admission of, for example, unreliable evidence." As shown, the statements in question were highly unreliable and thus inadmissible under due process principles.

### IV. Petitioner is entitled to habeas relief as to his claim regarding the Court's failure to assess his ability to pay fines before imposing them.

This Honorable Court contends that Petitioner's claim challenging the imposition of fines, fees, and assessments does not impact his ability to be released from custody and is, therefore, not cognizable on federal habeas review. (Resp., p. 36.)

Petitioner respectfully submits that, while errors of state law are generally not cognizable on federal habeas review, the impact of such errors—or adverse occurrences not technically violating state law—may nonetheless violate the Constitution if they render the trial fundamentally unfair. As the Supreme Court recognized in *Estelle v. McGuire*, 502 U.S. 62, 75 (1991), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), such circumstances may amount to a denial of due process under the Fifth, Sixth, and Fourteenth Amendments.

When a habeas petitioner raises a procedural error, the federal court must assess whether the underlying state proceedings satisfied due process. *Jamal v. VanDeKamp*, 926 F.2d 918, 919 (9th Cir. 1991). Similarly, if the admission of certain evidence is so prejudicial that it renders the trial fundamentally unfair, relief may be granted under the Due Process Clause. *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).

Additionally, habeas relief is appropriate under 28 U.S.C. § 2254(d)(2) where the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. A writ may also issue where the state court correctly identifies the governing legal principle but unreasonably refuses to apply it in a new, yet clearly

analogous, context. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *Washington v. Secretary Pa. Dep't of Corrections*, 801 F.3d 160 (3d Cir. 2015).

**PRAYER**

WHEREFORE, based on the foregoing, Petitioner has demonstrated that he was denied his right to due process. Accordingly, this Honorable Court should grant the within writ and release Petitioner.

Dated: June 27, 2025                              Respectfully submitted,

                                                  CRIMINAL APPEALS ADVOCATES P.C.

                                                         /s/ Kristen J. Mason
                                          By:    _____
                                                  Kristen J. Mason
                                                  Attorney for the Petitioner

# PROOF OF SERVICE

Case Name: Sean Ray on Habeas Corpus

I hereby certify that on June 27, 2025, I electronically filed the following document with the Clerk of the Court using the CM/ECF system:

**Objections to Magistrate Judge's Findings and Recommendation**

I simultaneously served a copy of the same on the Respondent via CM/ECF.

I declare under penalty of perjury that the foregoing is true and correct, and this declaration was executed at Los Angeles, California, on June 27, 2025.

_____/s/ Kristen J. Mason_____
Kristen J. Mason